## Williamson's Appeal.

1. The widow and administratrix of R. borrowed $600 of W. for the purpose of paying off a widow's dower upon the estate of the decedent. She obtained it upon an express promise to sell out the real estate of R., and repay W. out of the proceeds, giving her own note as collateral. The money was applied by the administratrix to the object for which it was obtained, and the real estate bound by the dower was sold and the proceeds brought into the Orphans' Court for distribution. W. claimed to be paid out of the fund, which claim the heirs resisted on the ground that the administratrix had no authority in law to borrow the money, and that the estate of R. was not liable therefor, and that W. could only look to the personal responsibility of the administratrix on her note. *Held*, that W. was entitled to the rights and remedies of the administratrix, and it was error to reject his claim.

2. Where the jurisdiction of the Orphans' Court has attached over a fund it comprehends within its grasp all powers necessary to make a distribution.

March 31st 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Appeal from the Orphans' Court of *Northampton county:* Of January Term 1880, No. 83.

Appeal of Henry Williamson from the decree of the court dismissing the exceptions filed by the said Williamson to the report of P. C. Evans, Esq., auditor upon the account of Jacob H. Beck, administrator de bonis non, &c., of Stephen Remaly, deceased.

From the testimony taken by the auditor he reported the following facts:

"That Stephen Remaly died prior to April 1st 1873; that at the time of his death there was a dower charged on his estate of more than $700 in favor of Mary Knecht; that about April 1st 1873, Mary Knecht died, and the dower became due; that Sarah Remaly had taken out letters of administration on the estate of her deceased husband, and, being desirous of remaining in possession of the estate and thereby to keep her family together, undertook the paying off of the dower; that to do this she borrowed $600 of Henry Williamson, and gave therefor her individual judgment-note. Williamson appeared before the auditor, and asked to have distributed to him the amount borrowed by Mrs. Remaly for the payment of the dower."

The auditor found that the money borrowed by Mrs. Remaly from Williamson went towards paying off the Knecht dower; that when Mrs. Remaly borrowed the money she promised to repay it when she should sell the decedent's real estate; that the administrator de bonis non included Williamson's claim in his schedule of debts of the decedent when he petitioned the Orphans' Court for an order of sale, but reported that Williamson had no standing as a claimant in the distribution of the fund derived from the sale of Stephen Remaly's real estate under an order of the Orphans' Court.

[Williamson's Appeal.]

Exceptions were filed to this report, which the court, Meyers, P. J., dismissed, in an opinion, inter alia, saying :

" The exceptions practically raise but two questions—1. Is Henry Williamson a creditor of the estate of Stephen Remaly, deceased? 2. Is Henry Williamson entitled to be subrogated to the rights of Sarah Remaly, adminstratrix, by reason of her payment of the Knecht dower?

" 1. It is not pretended that there was any contract relation between Williamson and the decedent in his lifetime.   The loan was made after the death of the decedent to his administratrix on her personal obligation.   It no doubt is true that the greater part, and probably the entire $600, was applied by the administratrix to the payment of a debt for which the estate was liable, and that Sarah Remaly, in her capacity as administratrix, induced Williamson to loan her the money upon the promise that it would be repaid out of the decedent's real estate when sold.   But these circumstances do not make the estate liable, even though the judgment-note had been executed by her as administratrix.

" A declaration alleging that the defendant, as executor, was indebted to the plaintiff for so much money lent by the plaintiff to the defendant, as executor, and for money had and received by the defendant as executor, for the use of the plaintiff, and that in consideration thereof the defendant, as executor, promised to pay, charged him personally, and the only possible judgment is *de bonis propriis* : Rose v. Bowler, 1 H. Black. 108 ; Powell v. Graham, 7 Taunt. 223 ; Ashby v. Ashby, 7 B. & C. 444.   And in this state it has been held that in all cases of promise, express or implied, made by an executor or administrator after the death of the testator or intestate, an action lies only against him personally : Grier v. Huston, 8 S. & R. 402 ; Beeson v. McNabb, 2 Barr 422 ; Solliday v. Bissey, 2 Jones 347 ; Seip v. Drach, 2 Harris 352 ; Bogle v. Kreitzer, 10 Wright 465.   In Seip v. Drach, *supra*, it was held that nothing is better settled than that an executor or administrator is answerable in his official character for no cause of action that was not created by the act of the decedent himself.   In actions against the personal representative on his own contracts or engagements, though made for the benefit of the estate, the judgment is *de bonis propriis*, and he is, by every principle of legal analogy, to answer it with his personal property.

" The doctrine sanctioned in Collins v. Weiser, 12 S. & R. 97, is not applicable.   There the declaration set forth an implied promise by an administratrix, as such, for money paid, laid out and expended by the plaintiff for her use as administratrix in consequence of the payment after the death of the intestate of a debt for which he and the plaintiff were jointly liable in his lifetime, which was held good, and that a judgment *de bonis testatoris* founded upon it may be supported.   In support of it, GIBSON, J., says, 'that an implied

[Williamson's Appeal.]

promise arises out of and follows the nature of the consideration, which in this case was the actual payment of money to the use of the administratrix, as such; and there is therefore no great technical absurdity in implying a promise by her in the character in relation to which the money was paid to her use. * * * While the debt did not arise until after his (the intestate's) death, the liability which produced the payment, which is the consideration of the promise, existed in his lifetime.' It is quite manifest that this case is an exception to the general rule, growing out of the fact that the plaintiff and the intestate were in the lifetime of the latter jointly liable for the debts paid by the plaintiff.

" The farthest that the courts have gone in this state is that where a settlement of an account against an estate is made by executors, an obligation by them, under their hands and seals, to pay the balance out of the assets of the estate creates no personal responsibility on their part beyond the assets which came to their hands: Allen *v.* Griffin, 8 Wright 397. So, also, where a warrant of attorney to confess a judgment is given directly to a creditor of the estate by an administrator, who signed it as such, it does not impose any personal liability upon him: Dickey *v.* Trainer, 7 Wright 509.

" The only authority that an administrator has to encumber real estate of a decedent for the payment of debts is by the Act of March 29th 1832, and that only extends to mortgaging the same under an order of the Orphans' Court. It was therefore held, in Barger *v.* Cassidy, 4 Phila. 324, by Judge Sharswood, of the District Court, that an order authorizing an administratrix to borrow money upon real estate was an authority to mortgage the estate and not to confess a general judgment. The administratrix borrowed the money on a judgment confessed by her as such, and in a collateral proceeding it was held that it did not bind the real estate of the decedent.

" The fact that in this case the claim of Williamson was included in the schedule of debts of decedent in the petition of the administrator de bonis non, &c., for an order of sale of the real estate, does not make the estate liable to Williamson when there was in fact no legal liability. Nor does the further fact that the parties to the judgment-note intended it to be only a collateral security to the parol promise made by the administratrix, as such, that the money loaned to her should be paid out of the estate have the effect of making the estate liable. It was not a promise to a creditor of the estate, but to a third party, the consideration. of which had its inception after the death of the intestate. For these reasons, he must look to Sarah Remaly for payment, who is the only person liable on her judgment-note.

"2. It is unquestionably the law that when an executor, administrator or assignee for the benefit of creditors advances money to

[*Williamson's Appeal.*]

pay a lien on the trust estate he is subrogated to the rights of the creditor whose claim he has paid: McCurdy's Appeal, 5 W. & S. 397; Wallace's Appeal, 5 Barr 103; Robb's Appeal, 5 Wright 45.

" This right of subrogation cannot, however, extend beyond the trustee who has paid the money. A third person who advances the money to the trustee to pay the same has no such equity. Even a payment by a third person to the creditor would give the former no rights either legal or equitable against the estate of the debtor, on the ground that he is a mere volunteer, unless he took an assignment of the debt. Whatever may be the rights of Sarah Remaly as administratrix to be subrogated to the rights of the heirs of Leonard Knecht, deceased, she makes no claim in that respect, and I know of no rule in equity that entitles her debtor, Williamson, to do so.

" We think the auditor was right in rejecting the claim on both grounds. Exceptions dismissed and report of the auditor confirmed absolutely."

From this decree this appeal was taken.

*George W. Geiser* and *Richard Brodhead*, for appellant.—The proceeding is in equity for distribution, and the Orphans' Court has ample powers to enforce equitable rights. The only question is, whether the heirs shall take appellant's money which increased the fund for distribution. The transaction is the same as though the appellant had purchased the Knecht recognisance, and at the same time taken an assignment, which would have given him a clear legal right *pro tanto :* Lithcap *v.* Wilt, 4 Phil. R. 64; McCormick, Adm'r, *v.* Irwin, 11 Casey 111, and Cottrell's Appeal, 11 Harris 294, rule directly that payment by a stranger does not extinguish the debt. The evidence establishes in law an actual purchase, and secondly, we have the right of subrogation to the Knecht recognisance, and thirdly, to the right of Sarah Remaly whether she claims for herself or not, and she is estopped to refuse to claim.

Jurisdiction having attached over the fund, equity comprehends within its grasp all incidental matters necessary to enable it to make a full and final distribution and therefore terminate litigation while it affords a perfect remedy. The doctrine is precisely the same in regard to distribution among creditors and others in the Orphans' Court: Souder's Appeal, 7 P. F. Smith 502; Bull's Appeal, 12 Harris 288; Kittera's Estate, 5 Id. 416; Dundas's Appeal, 23 P. F. Smith 474. The court admit that Sarah Remaly is unquestionably entitled to subrogation, but that unless she makes her claim Williamson can not do it because he is a mere volunteer. We deny that this is the law: Webster's & Goldsmith's Appeal, 5 Norris 409; Cottrell's Appeal, 11 Harris 294. Subrogation can be decreed in favor of any one,

whether a mere volunteer or not, so long as there are no subsequent rights affected: Mosier's Appeal, 6 P. F. Smith 81; Baily *v.* Brownfield, 8 Harris 41; McKerrahan *v.* Crawford's Exr's, 9 P. F. Smith 390; Kelchner *v.* Forney, 5 Casey 47; Wilkins's Estate, 9 Watts 132. An administrator who pays debts with his own money is entitled to subrogation: Wallace's Appeal, 5 Barr 103; Robb's Appeal, 5 Wright 49. But at all events Sarah Remaly stands in the relation of a surety to Williamson for the amount advanced, first, because the law implies this as the estate got all the benefit of the money, and second, this was her express agreement: Rice's Appeal, 29 P. F. Smith 206; Kramer & Rahm's Appeal, 1 Wright 71.

*Calvin G. Beitel,* for appellee.—In a suit to recover back this money the judgment would be *de bonis propriis,* not *de bonis testatoris.* This was so decided in Greer *v.* Huston, 8 S. & R. 402; Beeson *v.* McNabb, 2 Barr 422; Bogle *v.* Kreitzer, 10 Wright 465; Seip *v.* Drach, 2 Harris 352. An administrator cannot bind his decedent's real estate for any contracts made by himself, except in the way provided by the Act of Assembly of March 29th 1832: Barger *v.* Cassidy, 4 Phila. R. 324; Blank's Appeal, 3 Grant 292. The doctrine that the Orphans' Court is a court of equity means that in the exercise of its limited jurisdiction, conferred entirely by statute, it applies the rules and principles of equity. It is a special tribunal for special cases: Willard's Appeal, 15 P. F. Smith 265. We rely upon the opinion of the auditor and the court below.

Mr. Justice PAXSON delivered the opinion of the court, May 3d 1880.

Sarah Remaly, widow and administratrix of Stephen Remaly, deceased, borrowed six hundred dollars of the appellant for the purpose of paying off a widow's dower upon the estate of the decedent. She obtained it upon an express promise to sell the real estate and repay the appellant out of the proceeds, giving her own note as collateral. That the money was applied by the administratrix to the object for which it was obtained is not denied. The auditor finds "that the money borrowed by Mrs. Remaly from Williamson went towards paying off the Knecht dower; that when Mrs. Remaly borrowed the money she promised to pay it when she could sell the decedent's real estate; that the administrator *de bonis non* included Williamson's claim in his schedule of debts of the decedent when he petitioned your honorable court for an order of sale."

The real estate bound by the dower, and to relieve which the money of the appellant was advanced, has been sold, and the proceeds brought into court for distribution. The appellant claims to be paid his $600 out of said fund. This claim is resisted by the

[Williamson's Appeal.]

heirs upon the ground that the administratrix had no authority in law to borrow money in this manner ; that the estate of Stephen Remaly is not liable therefor, and that the appellant can only look to the personal responsibility of the administratrix upon her note. We may concede the soundness of this as a general proposition, and if the appellant were in a court of law seeking to enforce a general liability against the estate, he would be likely to encounter serious difficulty.  A judgment recovered upon the note would be *de bonis propriis*, and not *de bonis testatoris*, for the reason that it was her contract, and not the contract of the decedent ; Grier *v.* Huston, 8 S. & R. 402 ; Seip *v.* Drach, 2 Harris 352.  But this is a proceeding in the Orphans' Court, which for many purposes is clothed with equity powers.  When the jurisdiction of the Orphans' Court has attached over a fund, it comprehends within its grasp all powers necessary to make distribution.  In Dundas's Appeal, 23 P. F. Smith 474, the Orphans' Court denied its jurisdiction on the ground that it was necessary for the parties to go into a court of equity to obtain a decree to have a deed cancelled.  This ruling was reversed upon appeal to this court.  See Bull's Appeal, 12 Harris 286, and Kittera's Estate, 5 Id. 416.

In the case in hand, the heirs who have had their estate increased by the amount of the sum loaned by the appellant, deny the right of the administratrix to bind the estate, and yet seek to retain the proceeds.  This is not equity, but iniquity.  If the administratrix had advanced her own money to pay the dower, she would clearly have been entitled to subrogation : Wilkins's Estate, 9 Watts 132 ; Ketchner *v.* Forney, 5 Casey 47 ; McKerrahan *v.* Crawford's Ex'rs, 9 P. F. Smith 390.  The administratrix did not claim subrogation for the benefit of the appellant, as she might have done, and as good faith to him would seem to require, and being personally irresponsible, it is clear that unless the appellant's claim can be sustained he must lose his $600, and that just that amount will go into the pockets of the appellees.  Is the appellant entitled to subrogation?  It was said in Mosier's Appeal, 6 P. F. Smith 76, that privity of contract is not necessary in subrogation ; it rests on principles of mere equity and benevolence.  The principles of subrogation do not, however, apply in favor of volunteers.  They can only obtain the right to substitution by contract.  In this case the appellant was a volunteer.  He had no interests to protect in paying this money.  Is he entitled to substitution by contract? It requires no strain to hold that the transaction between the appellant and the administratrix was a purchase of the dower claim.  It is true, it was not so in form, but it was so in substance. It is not pretended that the administratrix intended to extinguish the claim when she paid off the dower.  Neither the claim of the Knecht heirs nor the bond has ever been marked satisfied.  Neither the administratrix nor the administrator de bonis non has ever

[Williamson's Appeal.]

claimed a credit for the payment of the dower. In the orders of sale applied for by them respectively this dower is returned in the schedule of debts as amounting, with interest, to $619.22. The administratrix expressly agreed with the appellant to sell the land and repay him out of the proceeds. This was an informal assignment of the claim to him. But it was without authority, say the heirs. This is true, and if they had not received the proceeds of the loan, would have been a sufficient answer. But in Jones v. The Building Association, ante, p. 215, we held, as this court has often held before, that where a person, assuming to act as agent for another, acts without authority, or exceeds his authority, the party benefited cannot repudiate the agency or the authority, and yet retain the fruits of his act. Here the administratrix, without authority, borrowed money for the benefit of the estate. The money went into the estate, and before the heirs can repudiate her act they must return the money.

Again, the appellant loaned his money upon the credit of the estate. Mrs. Remaly says she had no property of her own. The appellant refused to loan the money to her as she could not give security. Then it was she said she wanted it for the estate. He so loaned it and took her individual note as collateral security. The effect of this was to make her a surety for the estate to the amount of the loan; at least, if not so technically, she stood in the position of a surety. It is a familiar rule that where a surety, or a person standing in the situation of a surety for the payment of a debt, receives a security for his indemnity and to discharge such indebtedness, the principal creditor is in equity entitled to the full benefit of that security, and it makes no difference that such principal creditor did not act upon the credit of such security in the first instance, or even know of its existence: Kramer's Appeal, 1 Wright 71; Rice's Appeal, 29 P. F. Smith 168. It is to be observed that there are no intervening rights here which interfere with our doing justice between the parties.

We are of opinion, that the appellant was entitled to the rights and remedies of the administratrix, who had actually advanced the money to pay off the dower, and it was error to reject his claim.

> The decree is reversed at the costs of the appellees, and it is ordered, that the claim of the appellant be paid out of the fund in the hands of the administrator *de bonis non*.