Grand Lodge of Knights of Pythias, Appellant, *v.* Samson Lodge, No. 67.

Argued December 4, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused January 28, 1947.

*Israel K. Levy,* for appellant.

*William A. Gray,* with him *Walter Stein,* for appellee.

OPINION BY MR. JUSTICE LINN, January 6, 1947:

The Knights of Pythias is a secret fraternal order operating on the lodge system. At the base are subordinate lodges; over those in Pennsylvania, is the Grand Lodge and over that is the Supreme Lodge.[1] In this suit the plaintiff is the "Grand Lodge of Knights of Pythias of the State of Pennsylvania," a corporation organized under the law of Pennsylvania.

In 1868 the plaintiff, pursuant to its constitution, granted to nine named persons a warrant or charter to organize and constitute a subordinate lodge of Knights of Pythias in Philadelphia to be known as Samson Lodge No. 67 of the Knights of Pythias of Pennsylvania. In 1889 the then members of this lodge were incorporated[2] pursuant to the general incorporation act of

---

[1] Incorporated by Act of Congress approved June 29, 1894, 28 U.S. Stat. 96, amended 34 U.S. Stat. 934.

[2] Paragraph 196(a) of the Supreme Constitution and Statutes provides: "A subordinate lodge may incorporate under the laws of the state or province in which it is situated; provided, its articles of incorporation and by-laws shall not be inconsistent with the Constitution, statutes, principles and purposes of the grand lodge and Supreme Lodge Knights of Pythias."

1874, by decree of Court of Common Pleas No. 1 of Philadelphia; this corporation is now the defendant. Its charter recited that the subscribers thereto "are members of Samson Lodge No. 67 of the Knights of Pythias of the State of Pennsylvania in the City of Philadelphia and are associated together with others for beneficent charitable and benevolent purposes under a Constitution and by laws made in conformity with the Constitution and laws of the United States and of this Commonwealth and approved by the Grand Lodge of the Knights of Pythias of Pennsylvania and that in order more effectually to accomplish the objects of said Lodge they desire to be incorporated . . ."

Article 2 provides "The Corporation is formed for the purpose of paying its members incapacitated by sickness or disability from attending to their usual business or to some other occupation such sum or sums of money as weekly benefits and in case of the death of a member or his wife such other sum or sums as funeral benefits to the proper person to receive the same as the by-laws may prescribe all said sums to be paid out of the funds of the Corporation to be raised by dues and contributions of its members and to relieve its own and other members of the Order when in distress and when suffering from misfortune."

The general effect of such incorporation of the members constituting a subordinate lodge has been considered in several of our cases and was thus stated by Mr. Justice STERN in *Nokomis Tribe Red Men Dissolution Case,* 331 Pa. 53, 200 A. 23: "The incorporation effected a change, not of identity, but of legal form, and did not in any way affect the obligations to the state and national councils which the unincorporated body had originally assumed and which were inherent in the status of the Tribe as a component part of the fraternal organization: Commonwealth v. Heilman, 241 Pa. 374. What was said in that case (p. 385 and p. 390) applies equally to the present situation: 'The object in this

[the incorporation of the state council of the Junior Order of United American Mechanics] was not to sever the relations of the state council with the rest of the order but for certain purposes, to give it legal personality. In other words, the state council was left just as it was before incorporation except that it was endowed with corporate powers . . . The act [incorporating the state council] did not create a new society, nor was it the foundation of a new organization. It simply gave corporate form to an unincorporated branch of a society already in existence. It was not intended to create a new society with a purpose different from that of the old order, but, on the other hand, the manifest intention was to preserve the old order, and to make the incorporated branch an integral part of it.' To the same effect is Schriner v. Sachs, 253 Pa. 611, 616."

At a regular meeting of defendant lodge held on March 12, 1945, "it was unanimously RESOLVED, that the Charter granted on the 24th day of March, 1868, be surrendered to the Grand Lodge of Pennsylvania, Knights of Pythias, and that we continue to function thereafter as heretofore under the corporate charter granted to us on the 29th day of June, 1889, under June Term, 1889, No. 571, Court of Common Pleas No. 1 of Philadelphia County, as recorded in Charter Book No. 14, p. 585 etc., for Philadelphia County on the 8th day of July, 1889.

"AND IT WAS FURTHER RESOLVED that the Grand Lodge be duly advised of the foregoing action and that the charter granted by said Grand Lodge be returned."

That was a step in defendant's proposed withdrawal from allegiance to the plaintiff Grand Lodge and a separation from the order of the Knights of Pythias. The Grand Lodge refused to receive back the charter, as proposed by the subordinate lodge, and on October 2, 1945, filed this bill in equity against the defendant alleging the relationship of the three corporations among

themselves and referring to their respective constitutions and laws. Among other averments, plaintiff set forth that by defendant's conduct "the persons, who were members thereof at the time of its adoption, [of the resolution of March 12, 1945] lost their status as members of a subordinate lodge of the Order of Knights of Pythias, unless they apply for membership in some other subordinate lodge of the said Order, or upon refusal of admission by such lodge, maintain their status as members in a state lodge, known as Excelsior Lodge No. 1 Knights of Pythias.

"25. By reason of the secession of the defendant from the Order of Knights of Pythias, as aforesaid, all rights, benefits and privileges, to which members of the defendant would have been entitled, thereupon ceases and determines; and the funds, assets and other property of the defendant, after the payment of all its just obligations, reverts to the plaintiff for the purposes of the said Order, and do not belong to those who happened to be members of the defendant at the time of its secession."

The bill prayed for a decree declaring the resolution adopted by the defendant on March 12, 1945, "to be illegal, and contrary to the laws of the Supreme Lodge Knights of Pythias and the plaintiff, its fraternal charter, its corporate charter and its own by-laws"; restraining " the defendant, its officers, members, and all others associated with it, from administering, managing and distributing the funds, assets and property belonging to the said defendant at the time of its secession from the plaintiff on March 12, 1945, as aforesaid, and from paying, transferring or assigning the same, or any part thereof, to any person or persons other than to the plaintiff": requiring the delivery to plaintiff of certain lodge property; for an accounting; and restraining defendant, its officers and members from using the name Knights of Pythias, etc. and for general relief.

The case was heard on bill, answer and proofs and the bill was dismissed [3] on two grounds.

1. The important issue is whether the plaintiff or the defendant shall administer a fund of $17,089.06 in defendant's treasury, representing the proceeds and increment of the sick and death benefit collections received and held for the relief of defendant's members as provided in its by-laws.

One of the findings of fact made by the learned chancellor and approved by the court in banc is: "The defendant on March 12, 1945, had funds of $17,089.06, which were acquired by defendant from dues of its members and income from investments, for the sole purpose of providing sick and death benefits to its own members, in accordance with its by-laws."

Neither the Supreme Lodge nor the plaintiff Grand Lodge provided for the collection or payment of sick or death benefits; the subject was left to the discretion of subordinate lodges. [4]

---

[3] The decree directs: "1. That defendant return to plaintiff its rituals, seals, paraphernalia, regalia and such effects as deal with the fraternal aspects of the Order of Knights of Pythias.

"2. That defendant give up the use of the name Knights of Pythias.

"3. That defendant retain its assets and other property for the benefit of its members, in accordance with its rules, regulations and by-laws.

"4. That the bill in equity in this case is dismissed at the plaintiff's costs."

[4] Section 8 of Article XII of the Supreme Constitution and Statutes provides "Subordinate Lodges may provide for and pay weekly or funeral benefits, or both."

The Grand Constitution and Statutes, the plaintiff's, provides: "Sec. 9. Each subordinate lodge may, by its by-laws, provide for and pay sick or funeral benefits, or both; and may also provide therein for the payment of benefits upon the death of the wife of a member."

Defendant's by-laws provided:

Article III entitled "Fees" provided for the collection of specified fees for certain privileges. Article IV provided that "Each member

The plaintiff does not allege that defendant has committed any fault in the administration of the fund, nor has plaintiff called our attention to any evidence that would support an obligation on the part of defendant [5] to turn the fund over to plaintiff for administration. Chapter XIV of the Grand Constitution and Statutes of the plaintiff provides in sec. 249, entitled "Funds": "The manner in which the funds of a subordinate lodge shall be disposed of, and the purposes to which they shall be applied, are matters entirely within the discretion of the lodge, except that such funds shall not be used for any purpose inconsistent with the laws, principles and purposes of the Order, and shall not be partitioned or divided among the members of the lodge; and that, in case the lodge from any cause shall cease to exist, its funds shall revert to the Grand Lodge." We understand that all sums annually required to be paid by defendant to plaintiff have been paid.

---

of the Lodge shall pay into the funds of this Lodge the sum of fifteen (15) cents per week . . ."

Article VI, entitled "Sick and Death Benefits" provided: "Section 1. Each member entitled to benefits one year after attaining the rank of Page, providing he has received the rank of Knight, if sick or disabled, shall receive the sum of Five ($5) Dollars per week for thirteen consecutive weeks; Four ($4) Dollars per week for the next thirteen consecutive weeks; Three ($3) Dollars per week during such sickness or disability.

"Section 6. On the death of a member entitled to benefits the sum of One Hundred ($100) Dollars shall be paid to his nearest living relative or any person he may designate.

"Section 7. On the death of the wife of a member entitled to benefits the sum of Fifty ($50) Dollars shall be paid, but in no case shall a member receive benefits for more than one wife."

Section 1 was amended February 1, 1937, to read: "Section 1. Each member entitled to benefits one year after attaining the rank of Page, providing he has received the rank of Knight, if sick or disabled, shall receive the sum of Five ($5) Dollars per week for 10 weeks in 52 consecutive weeks."

[5] The adjudication states: "Defendant has agreed to return to plaintiff its rituals, seal, paraphernalia, regalia and such effects as deal with the fraternal aspects of the order of Knights of Pythias, and not to use the name Knights of Pythias."

The administration of the sick and death benefit fund for the purpose for which it was raised therefore remains "entirely within the discretion of the lodge except" as stated in section 249 and is confined to the purposes designated in its by-laws; neither plaintiff nor court may assume that defendant will fail in the performance of its fiduciary duties to its members. The law furnishes a remedy for maladministration. The provision in section 249 that "in case the lodge from any cause shall cease to exist, its funds shall revert to the Grand Lodge" is not applicable in the circumstances presented by the record.

2. The learned court below also found that plaintiff had failed to perform its Grand Lodge obligations to defendant as a subordinate lodge with the result that the "clean hands" doctrine required the dismissal of the bill. In view of our conclusion on the first point it is unnecessary to discuss this one.

Decree affirmed, costs to be paid by appellant.

Mr. Justice PATTERSON dissents.