Grand Castle, Knights of the Golden Eagle of Pennsylvania, Association, Appellant, *v.* Oley Castle No. 119, Knights of the Golden Eagle of Pennsylvania, Association, et al.

Argued January 8, 1948. Before MAXEY, C. J., DREW, LINN, STERN, STEARNE and JONES, JJ.

*Jean De B. Bertolet,* with him *Ralph S. Croskey, Wellington M. Bertolet, Croskey & Edwards* and *Bertolet & Bertolet,* for appellant.

*Samuel E. Bertolet,* with him *James W. Bertolet* and *David Sharman, Jr.,* for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 22, 1948:

Plaintiff filed a bill in equity against defendants, praying that Oley Castle No. 119, Knights of the Golden Eagle of Pennsylvania, be ordered to deliver to plaintiff all its moneys, securities, paraphernalia and other property, and that Oley Home Fraternal Association, party defendant, be ordered to convey by deed any and all real estate transferred to it by Oley Castle No. 119 and to transfer a mortgage assigned to it; and that the First National Bank of Oley be ordered to deliver to plaintiff all moneys and other properties held by it for defendants. The court decreed that the First National Bank of Oley pay to plaintiff $88.46, the sum on deposit with it in the account of Oley Castle. Plaintiff's bill of complaint as to the remaining defendants was dismissed. This appeal followed.

Plaintiff is a benevolent unincorporated association. It was organized in 1886 and operated on the "lodge system" with subordinate lodges affiliated with it. In 1886 it granted a charter to Oley Castle No. 119. Under its Constitution, plaintiff as the parent organization was vested with control and management over subordinate organizations. The latter were bound by its provisions. In 1895 plaintiff incorporated under the General Corporation Law of April 29, 1874, P. L. 73, and continued as a legal entity until September 15, 1941 when it dissolved and reverted to its original unincorporated status. During its corporate existence, it continued to operate on the lodge system, exercising rights of superiority over and requiring fealty from subordinate lodges, including

Oley Castle No. 119, in direct violation of its charter prohibitions and statutory provisions. The authority it thus continued to assert over subordinate bodies was ultra vires.

The members of Oley Castle No. 119 filed articles of incorporation on December 20, 1939, pursuant to the Nonprofit Corporation Law of Pennsylvania, Act of May 5, 1933, P. L. 289, for the purpose of organizing a non profit corporation under the name of Oley Home Fraternal Association. The purpose of the new association was to provide " a home for members of Oley Castle No. 119, Knights of the Golden Eagle, Oley, Pennsylvania, as well as to entertain the members and families of the proposed corporation and members of Oley Castle No. 119, Knights of the Golden Eagle" and also to provide a "fund by regular initiation fees, monthly dues, fines and assessments from its members and by voluntary donations, for the regular payment of sick, disability and death benefits to the members or their beneficiaries". Sick and death benefits were provided for in amounts similar to those previously paid by Oley Castle No. 119. The articles were approved on February 5, 1940. From the time of the formation of Oley Castle No. 119 (hereinafter referred to as Oley) and Oley Home Fraternal Association and subsequent thereto, no new members were admitted to either organization.

On March 18, 1940, pursuant to action taken at a meeting of Oley held February 19, 1940 and attended by six of its members, the trustees of Oley transferred by deed to Oley Home Fraternal Association two parcels of real estate, comprising part of its assets, and assigned a mortgage of $900 secured on a two-story brick dwelling house located at 432 Spring Garden St., Reading Pa. Oley also transferred on May 8, 1940 $872.48 and $300 on February 19, 1941 to the newly organized association. No part of the transferred property, which plaintiff now seeks to recover, was donated or contributed by the latter. It represented the contributions and accumula-

tions of the members of Oley. No member of Oley withdrew as a result of these transfers nor did any member disapprove or dissent therefrom.

After September 15, 1941, Oley reaffiliated itself with plaintiff which had resumed its unincorporated status at that time. On December 15, 1942, charges were preferred against the subordinate Castle by plaintiff for failing to comply with its laws, rules, regulations, customs and usages. The charges consisted of the following: (a) It failed to pay its per capita tax for the term ending June 30, 1941; (b) It failed to pay its per capita tax for the term ending June 30, 1942; (c) It failed to render the required reports for the term ending December 31, 1941; (d) It failed to render the required reports for the term ending June 30, 1942. A hearing was conducted and testimony taken on February 6, 1943. Defendant was subsequently adjudged guilty as charged and its charter was declared revoked and forfeited on March 12, 1943. Plaintiff demanded the return of its charter, rituals, seal and books, papers and other property in the custody of Oley.[1]

More than two years after the challenged transfers, on July 27, 1943, plaintiff instituted this suit against defendants, basing its claim on Articles 67, 70 and 101 of its Constitution. These articles provide in substance that it is the duty of defendant, when it becomes defunct or its charter be declared forfeited, to deliver its dispensations, charter, books, badges, jewels, funds and other properties to the Grand Chief of the Grand Castle of Pennsylvania to be held in trust by the Grand Castle for the use of the members of the defunct, dissolved, or suspended castle as may become members of the Castle of Protection. Defendant avers that at the time the transfers were executed plaintiff was a corporation es-

---

[1] F. W. Anton, Grand Master of Records of the Grand Castle, testified at the trial that on April 7, 1943, Oley Castle returned the charter, seal and rituals without any communication but did not transfer to it any of its funds or property.

tablished under the Act of 1874 and had no right whatsoever over the defendant Oley Castle, its members, or its property and assets; in addition, whatever moneys or assets it acquired since that time were acquired after it severed all connection with plaintiff and became an independent beneficial organization.[2]

The Chancellor concluded that Oley Home Fraternal Association must by deed transfer to plaintiff the real estate conveyed to it and assign the mortgage in question; the return of all moneys transferred to it was also ordered. These conclusions of law were vacated by the court en banc. After granting a rehearing to defendant, the court affirmed the decision of the court en banc, stating in its opinion:". . . we cannot agree with the plaintiff, the exceptant, that the transfer by Oley Castle No. 119 was a breach of trust . . . From the foregoing, coupled with the already established facts that the assets in question were all contributed by the members of Oley Castle for the purpose of providing for sick and death benefits for themselves and the expenses of their organization, it is now made clear that the original owners and beneficiaries of the assets are still the owners and beneficiaries of the same; that the members by their subsequent conduct have approved the transfer to Oley Home Fraternal Association; and that said assets are still being held for the same purposes; in other words, that there has been no breach of trust." It sustained that part of the Chancellor's order directing defendant, First

---

[2] In its Petition to Amend Answer, defendant avers that plaintiff is barred from maintaining its action by the statute of limitations since the Act of June 20, 1883, P. L. 132, sec. 1, provides that all suits commenced or brought to enforce the provisions of the Act shall be commenced within two years after the time when the distribution of the funds and property of an unincorporated association organized for benevolent, charitable or beneficial purposes, shall have been made. At the trial, counsel for the defendant requested leave to further amend its Answer in order that the record may show that at the time plaintiff's bill was filed, Oley Castle "did not function or exist in the sense of functioning as such."

National Bank of Oley to turn over to plaintiff the sum of $88.46, being the balance outstanding in the account of Oley Castle No. 119.[3]

The authority of Oley Castle No. 119 to transfer any or all of its assets between 1895 and September 1941, the period of the Grand Castle's *corporate* existence when it had no capacity to govern subordinate Castles, is not questioned by plaintiff. Nor does it allege maladministration of defendant's assets. Instead, plaintiff avers that the transfers were unlawful and in violation of the trust then existing in favor of all the members of Oley Castle. Plaintiff's objections relate to the course of action voted upon by the six members of Oley Castle who were present at the February 19, 1940 meeting, since no notice of the meeting was given to Castle members other than a printed post card stating that some financial affairs would be taken up. It contends that the majority of defendant's members had no authority to divert Castle assets from its trust purposes and any non-assenting members had the right to invalidate the transfers immediately after their consummation and to pursue the assets in the hands of Oley Home Fraternal Association.

There is no justification for the plaintiff's contention that the transfers were executed in disregard of the will of the minority. The record shows that all members assented thereto. The case of *Schriner et al. v. Sachs et al.*, 253 Pa. 611, 98 A. 724, relied on by the plaintiff is inapplicable. In that case the majority severed relationships with the parent organization, taking with them all the paraphernalia and assets. This was done without the approval of the minority. The court compelled the majority to surrender the property appropriated. In the instant case, no member complained of the

---

[3] S. J. Hartman, Cashier, First National Bank of Oley, testified that the account of Oley Castle was active until June 16, 1943 when the last disbursement and deposit were made. He also stated that at the time of the trial the account reflected a balance of $88.46 on deposit.

transfers and all became affiliated with the new association. The only parties who could complain of an alleged breach of trust would be non-assenting members injured by the transfers, but there were no such members. We agree with the court's statement: "There is no good and equitable reason why the property in question should be taken away from the people by and for whom it was contributed or why those people should be compelled to re-associate with the plaintiff."

By virtue of the prohibitions of the Act of April 29, 1874, plaintiff after its incorporation in 1895, divested itself of the right to act as a parent organization over subservient bodies. For this reason it was powerless to attack defendant's actions executed prior to the liquidation of plaintiff's status, nor could it assert any form of authority over defendant. Plaintiff resumed its suzerainty over Oley Castle only when the latter became reaffiliated with it in September 1941. Whatever assets defendant possessed at that time and accumulated prior to the revocation of its charter, were properly within plaintiff's jurisdiction. The powers which plaintiff regained as a result of its reversion to an unincorporated association were not retroactive. Consequently, the transfers made by Oley Castle prior thereto were none of its affair.

What this Court said in *Chosen Friends Castle No. 33, Knights of the Golden Eagle of Pennsylvania*, 342 Pa. 60, 20 A. 2d 237, applies to the instant case. There we stated: "The incorporation of the Grand Castle in 1895 created a legal entity with certain powers. But nowhere among these powers is found the right to 'procreate' subordinate lodges. . . . Commonwealth of Pennsylvania denies to this appellee any right to operate as a 'supreme lodge', for a corporation has no powers except such as are bestowed by the grant contained in its charter. . . . If the appellee had no rights to institute other lodges, it has no right to appropriate their property. . . . Whatever relationships it may have had

with the appellant as a 'subordinate lodge' were extra-legal and impart no validity to its demand." Insofar as our decision with respect to the challenged transfers is concerned, the fact that plaintiff was an unincorporated association at the time this action was filed is of no materiality. The transfers in question occurred at a time when plaintiff had no say in the matter. In addition, there is no law which prohibits defendant from dis-associating itself from the control of the parent organization. See *Grand Lodge of Knights of Pythias v. Samson Lodge*, 355 Pa. 571, 50 A. 2d 363. In that case we also held that ". . . neither plaintiff nor court may assume that defendant will fail in the performance of its fiduciary duties to its members." The following statement from 1 Bacon on Benefit Societies (1904), sec. 116, is quoted with approval by this Court in *State Council Junior Order of United Am. Mech's v. Emery*, 219 Pa. 461, 467-68, 68 A. 1023: " '. . . Even if unincorporated, the majority of a society have generally the right to cut loose from a superior governing body, and the minority have no redress if the property is used for the general purpose for which it was acquired.' "

Oley Castle No. 119 ceased to exist upon the revocation and forfeiture of its charter on March 12, 1943. The assets which it accumulated prior to that date and after September 15, 1941 when the Grand Castle became *un*incorporated and therefore could legally exercise parental powers, were subject to disposition in accordance with Grand Castle's constitutional provisions. Oley Castle's action in transferring certain of its possessions before September 15, 1941 is not within Grand Castle's legal power to challenge.

The decree of the court is affirmed at cost of appellant.