Chosen Friends Castle No. 33, Knights of the
Golden Eagle of Pennsylvania Appeal.

Argued April 23, 1941. Before SCHAFFER, C. J.,
MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Thomas Raeburn White,* of *White & Staples,* with
him *C. L. Cushmore, Jr.* and *Charles H. Hassert,* for
appellant.

*Ralph S. Croskey,* of *Croskey & Edwards,* with him
*Theodore L. Reimel,* for appellee.

OPINION BY MR. JUSTICE MAXEY, May 12, 1941:

This is an appeal by the Chosen Friends Castle No. 33, Knights of the Golden Eagle of Pennsylvania, hereinafter referred to as the Friends, from the decree of the court below stating in effect that if the appellant, an incorporated local beneficial organization, wishes to dissolve, it may do so upon proper procedure being taken, but its property and money must be first turned over and surrendered to the Grand Chief or his deputy of the Grand Castle in compliance with the terms and conditions of its constitution and by-laws. This decree was entered on January 4, 1940. On December 18, 1940, the court below discharged the rule to show cause why its earlier decree should not be opened and certain after-discovered evidence submitted.

On January 10, 1939, appellant filed a petition in the Court of Common Pleas No. 5 of Philadelphia County, for dissolution under the Act of May 5, 1933, P. L. 289. In its petition it asked that its funds, amounting to $21,552.19, be distributed among its thirty "present" members. To this petition an answer was filed by the Grand Castle, Knights of the Golden Eagle of Pennsylvania, hereinafter referred to as the Grand Castle, asserting that "the petitioner [i. e., the Friends] was instituted and received its charter from respondent on October 28, 1884; it being so instituted as a subordinate lodge of respondent." Its answer contains certain new matter reading, inter alia, as follows: "8. Respondent, Grand Castle . . . is the Grand Lodge and superior body of an organization commonly known as Knights of the Golden Eagle of the State of Pennsylvania, and the parent organization of petitioner. 9. Petitioner is one of the many subordinate associations or lodges in said organization. 10. Respondent granted, instituted, and gave a charter to petitioner, Chosen Friends Castle No. 33, . . . on October 28, 1884, and since then petitioner has been affiliated with respondent and recognized it as its superior body and parent. 11. As

a parent lodge, respondent has adopted a Constitution which fixes the rights and duties of petitioner, and all of its members." It was further set forth in the answer: "That instead of the said Lodge and its officers retaining said moneys, funds, properties, in the Treasury thereof or with the Keeper of Exchequer, the members thereof hereinbefore named are now attempting to illegally dissolve petitioner castle, and after its dissolution instead of delivering its dispensations, charter, books, badges, jewels, and other property to the Grand Chief of the Commonwealth of Pennsylvania or his deputy, in compliance with the act of assembly of June 20, 1883, to be held by said Grand Lodge as provided in their Constitution, the petitioner and its said members seek to illegally distribute among themselves all of the funds, moneys, securities, and other property belonging to the said Lodge and appropriate the same to their own use and benefit and thus deprive the respondent of the right to said funds and property, and respondent avers that the distribution of said moneys, properties, securities among the members of said Lodge is illegal and contrary to its laws and to the laws of the Commonwealth of Pennsylvania. That under Articles 67, 68, 69, and 101 of the Grand Lodge of the Commonwealth of Pennsylvania, it is the duty of the defendant upon dissolution to deliver its dispensations, . . . funds and other properties to the Grand Chief of the Grand Lodge of Pennsylvania, or his deputy, in compliance with the Act of Assembly of June 20, 1883, to be held in trust by the Grand Castle . . . for the use of such members of the defunct, dissolved, or suspended castle as provided in Article 101 of the said Grand Castle, and said Articles 67, 68, 69, and 101, being a part" of the Constitution of the Grand Castle.

At the time the charter was granted to the Friends in 1884, both the Grand Castle and the subordinate lodge were unincorporated. The Friends became incorporated under the Act of April 29, 1874, P. L. 73, in June, *1917,*

and endeavored to separate itself from the Grand Castle, and for about twenty years there was no compliance by the Friends with the rules and regulations of the Grand Castle, and all relations between them had been terminated.

The court below held that the reasons advanced by the Friends were not sufficient to sustain the contention that the Friends had ceased to be a subordinate lodge of the Grand Castle and entered the decree already quoted. The Friends took an appeal to this court but before the appeal came on for argument the Friends discovered what it had not previously known, that appellee had been incorporated in 1895 *under the Act of 1874,* and that it had no power to have subordinate lodges. The Friends therefore contend that the appellee has no standing to appear in this proceeding as the superior lodge of the Friends.

A petition was filed with the Supreme Court, praying that the record might be returned to the court below in order that a petition to open the decree might be filed, in view of the fact that the petitioner, since the taking of the appeal, has discovered the following facts which do not appear in the record of the court below and which were not presented to or passed upon by that court: "(a) The appellee . . . was incorporated by the Court of Common Pleas No. 1 of Philadelphia County on July 8, 1895, . . . under the provisions of the Act of 1874, under which Act your petitioner is also incorporated; (b) Prior to the incorporation of appellee . . . it had been held to be the law of Pennsylvania that a corporation incorporated under the Act of 1874 as a beneficial lodge had no power to institute or have subordinate lodges (see [Judge ENDLICH's opinion in] *Commonwealth v. Order of Vesta,* 2. Pa. Dist. Rep. 254); . . . (d) the proceedings in the Court of Common Pleas No. 1 of Philadelphia County relating to the incorporation of appellee show that as originally submitted to the said court said char-

ter contained a proposed additional power reading as follows: 'to institute subordinate associations called Castles, which shall be supported and maintained by the payment of dues by their membership, and from which a suitable assessment shall be paid for the support of the Grand Castle,' which said additional power, however, was stricken from the proposed charter before said charter was granted by the court." The petition to remit the record set forth further: "That the foregoing after-discovered evidence could not previously have been discovered in the exercise of due diligence because your petitioner had no reason to believe that the appellee . . . was incorporated under any statute other than the Act of April 6, 1893, P. L. 10" (see footnote, post).

The appellee answered "that appellant was instituted, received, and accepted its lodge charter from appellee on October 28, 1884, it being so instituted as a subordinate lodge of appellee, and admittedly managing and conducting as such its affairs from then until at least January 1, 1920, when, according to its sworn averment, it 'separated itself from the said Grand Castle and has since that time constituted a separate organization and corporation. . . . .' For thirty-six years appellant admittedly came under appellee's jurisdiction and was a component part of appellee's organization, being one of many subordinate lodges which existed under and by virtue of the appellee parent body. . . . When appellant granted a lodge charter to appellant on October 28, 1884, it was an unincorporated organization. Any change from such a status into that of a corporate one by either of the parties was a change in form and not in substance. Appellee, whether incorporated or not, was and now is the parent body of appellant, and any such change does not alter the duties and contractual obligations inter se."

The court below in refusing to open the decree said, inter alia: "The primary question involved is whether

the fact that the respondent was incorporated in 1895 under a statute which conferred upon it no authority to create subordinate lodges warrants a reversal of our former decree. The act of incorporation by the Grand Castle was a nullity in so far as its relationship with the subordinate lodges and their constitutent members was concerned. The respective rights and liabilities of the parent and subordinate organizations to each other remained unchanged and the obligations assumed by each to the other and toward their members continued. Moreover, that status was recognized by all parties in interest without qualification. The Grand Castle continued to function as a parent organization in the same manner as it did before incorporation. This was done with the knowledge, consent and approval of the constitutent bodies. The petitioner recognized the Grand Castle as a superior body under which it operated. In fact, in a vain attempt to secede, the petitioner itself became incorporated in 1917. . . . . It must be conceded that the Grand Castle could not escape its obligations to the subordinate bodies and their members by assuming a corporate form. The converse is likewise true. The subordinate bodies and their members remained bound to the parent body that had created them and to whom they were obligated by contract. The incorporation, therefore, effected a change not in identity but merely in legal form. Both in law and in fact the obligations to the parent body which the petitioners had assumed originally were not affected in any way: *Commonwealth v. Heilman*, 241 Pa. 374; *Nokomis Tribe No. 307 v. The Improved Order of Red Men*, 331 Pa. 53. In substance, as far as the subordinate lodges were concerned, the original unincorporated association was still functioning."

In the Heilman case, just cited, this court held that the mere incorporation of a subordinate council of a secret, fraternal and beneficial order does not render such council independent of the order, especially when

such council adopts a constitution and by-laws which unequivocally recognize the supremacy of the national council and constitution and laws of the order. In that case Judge AUDENRIED of the court below pointed out: "In the 5th section of the Act of March 1, 1870, by which the state council of Pennsylvania was granted corporate powers, it was provided that the by-laws of that organization should continue to bind the corporation until altered, amended or abrogated. .... The object in this was not to sever the relations of the state council with the rest of the order but for certain purposes, to give it legal personality." This court took the same view, stating that the Act of 1870 "did not create a new society, nor was it the foundation of a new organization. It simply gave corporate form to an unincorporated branch of a society already in existence. . . . The manifest intention was to preserve the old order, and to make the incorporated branch an integral part of it. This . . . was the view accepted and acted upon by the national council, state council and members of the order from the time the act was passed in 1870 until the difficulties arose which gave rise to the present controversy."

In the Nokomis Tribe case, this court held that the incorporation of a subordinate body of a beneficial association under the provisions of the Non-profit Corporation Law of May 5, 1933, P. L. 289, effects a change not of identity but of legal form of the subordinate body and does not in any way affect the obligations to the state and national councils which the unincorporated body had originally assumed and which were inherent in its status as a component part of the fraternal organization. We said: "The court below found that after Nokomis Tribe obtained its charter of incorporation in 1919, it continued in all respects as before so far as its relations with the state and national councils were concerned, paying its per capita tax, electing its representative to the state council, using the name

under which its fraternal charter had originally been granted, and, in general, maintaining its operation in accordance with the constitution and by-laws of the unincorporated association. Its charter from the State of Pennsylvania was obtained upon the representation that the Tribe was under the control of the parent bodies of the Order and subject to their laws." In other words, the mere incorporation of a subordinate body does not destroy its subordinate character when it chooses to remain subordinate.

That the instant case is distinguishable from the above two cases is manifest by certain findings of fact of the court below to wit: "6. On June 25, 1917, when petitioner became incorporated, it was the purpose of petitioner to relieve itself of its obligations to the Grand Castle in so far as its property and funds were concerned. . . . 8. Since 1919 or two years after the incorporation of petitioner, it failed to send to the Grand Castle a statement of its arrears, of its per capita tax and copy of the proceedings, and as a result of refusal to pay its per capita tax, the Grand Castle refused to give it a password. 9. Only on two occasions since January 1, 1920, to wit, February 28, 1927, and June 14, 1927, has a district grand chief visited the subordinate lodge. 10. No ballots were supplied by the Grand Lodge to the subordinate lodge to be used for voting of officers thereof. . . . 15. The Grand Castle made a number of demands upon the petitioner for the payment of the per capita tax and in 1926 directed an attorney to write a letter to the petitioner demanding the tax and suggesting if it was not paid, an action for dissolution might be brought. This was not followed up by any action." The first conclusion of law of the court below is as follows: "The Grand Castle . . ., is a corporation duly incorporated under the laws of the Commonwealth of Pennsylvania of which the Chosen Friends Castle No. 33 is a subordinate lodge." In the light of the above quoted findings of fact, it must be

concluded that the Chosen Friends Castle No. 33 proved itself a very *in*subordinate "subordinate".

Appellee relies on the case of *Grand Castle, Knights of the Golden Eagle, v. Taylor et al.,* 278 Pa. 9, 122 A. 210. Apparently there was no disclosure in that case that the Grand Castle, Knights of the Golden Eagle, was incorporated under the Act of 1874. The court treated the Grand Castle as an unincorporated association. The opinion was predicated on the assumption stated in its very beginning that "defendants comprise the full membership of Altoona Castle, a subordinate association in a fraternal beneficial organization, of which plaintiff, appellant, is the parent body." In other words, the fact which was assumed and apparently conceded as the starting point in *that* case is the fundamental *fact in issue* in *this* case. The opinion in that case refers to "the compact to which defendants subscribed upon becoming members of the Knights of the Golden Eagle," and says that it "stipulates certain benefits to be enjoyed and obligations to be assumed, one of which is, upon a dissolution of their subordinate association, to pass over all funds to the Grand Castle, so that body may continue in its own proper way to carry out the general trust on which such funds had theretofore been held, and this obligation defendants must perform." The appellant here after being incorporated in June, 1917, neither expressly nor by implication of law subscribed to any such compact. Appellant was a free agent and was subordinate to no other lodge. It was certainly not subordinate to the appellee, for the latter under its charter had no rights of "overlordship" in respect to other lodges.

Since the Grand Castle's charter was obtained under the corporation Act of April 29, 1874,[1] supra, it

---

[1] The Grand Castle was never incorporated under the Act of April 6, 1893, P. L. 10, which authorizes the creation of "fraternal *beneficial societies*" with the power "to carry on their operations through supreme and subordinate bodies or lodges" (sec. 1, subd. 9).

had no authority to create subordinate lodges or to accept their fealty. It and the lodges loyal to it may have believed it possessed this power and have acted accordingly but the actual power of this creature of the law was not thereby enlarged. When challenged as to its right to exercise any power, it has to stand or fall on the charter whence all its powers come.

The court below in its opinion filed December 18, 1940, treats the incorporation of the appellee on July 8, 1895, as a nullity. It says: "The act of incorporation by the Grand Castle was a nullity in so far as its relationship with the subordinate lodges and their constituent members was concerned. The respective rights and liabilities of the parent and subordinate organizations to each other remained unchanged and the obligations assumed by each to the other and toward their members continued. . . . The subordinate bodies and their members remained bound to the parent body that had created them and to whom they were obligated by contract. . . . In substance, as far as the subordinate lodges were concerned, the original unincorporated association was still functioning. Only in the event that a person independent of the organization became involved in litigation with the Grand Castle would the fact of corporate form become material."

This reasoning cannot be accepted. The incorporation of the Grand Castle in 1895 created a legal entity with certain powers.[2] But nowhere among these powers is found the right to "procreate" subordinate lodges. The corporation created in 1895 under the Act of 1874 and known as "The Grand Castle, Knights of the Golden Eagle," was *not* a "parent body" and the court there-

---

[2] "A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence": Chief Justice MARSHALL in *Dartmouth College v. Woodward,* 4 Wheat. 518, 636.

fore erred in treating "The Chosen Friends Castle No. 33, Knights of the Golden Eagle" born in 1917 as a body subordinate to this putative parent. The unincorporated body known before 1895 by the same name as that which the appellee now bears ceased to have any legal existence in 1895. It is no party to this proceeding. The Commonwealth of Pennsylvania denies to this appellee any right to operate as a "supreme lodge", for a corporation has no powers except such as are bestowed by the grant contained in its charter. Every charter when read with the statute from which it derives its being designates a certain field of corporate activity; by clear implication engaging in any other field of activity is prohibited as "ultra vires". Appellee's demand on the corporate appellant as a lodge "subordinate" to it for the latter's property upon its corporate dissolution is a demand which this Commonwealth will not enforce. A corporation exists as an objectively real entity[3] and *its* property is as much within the protection of the law as an individual's property.

If the appellee had no right to institute other lodges, it has no right to appropriate their property. It has nowhere in this record shown its investiture with the right it now asserts. Its charter is its "birth certificate" and the "blue-print" of its powers. Whatever relationships it may have had with the appellant as a "subordinate lodge" were extra-legal and impart no validity to its demand.

The decree of the court below is based on the erroneous conclusion of law that the appellant "is a subordinate lodge" of appellee.

The decree is reversed; costs to be paid by the appellee.

---

[3] "A corporation is as visible a body as an army; for though the commission or authority be not seen by every one, yet the body, united by that authority, is seen by all but the blind": 1 Kyd, Corporations, 16.