## Woman's Christian Temperance Union of Pennsylvania v. Bearhalter

*Burton Spear*, for W.C.T.U. of Pennsylvania.

*George W. Tracy*, for Bearhalter and VanLuvanee.

*John S. Thome, Jr.*, for W.C.T.U. of Philadelphia, Williams and Ebron.

*John D. Trainer*, for Boornazian.

*John A. Solis-Cohen, Assistant Attorney General*, for Commonwealth.

WALSH, *J.*, October 12, 1977—

## STATEMENT OF THE CASE

This litigation stems from challenges to the validity of conveyances of portions of a tract of land, approximately 28 acres in size, on which stand a stone dwelling and barn in New Britain Township, this county. On or about June 13, 1960, the Woman's Christian Temperance Union of Philadelphia (W.C.T.U.-Philadephia), a nonprofit corporation, purchased the property at a cost of approximately

Note: Honorable Edmund V. Ludwig did not participate.

$32,000 with funds committed to charitable purposes. An additional $15,000 was spent for improvements. Thereafter, Ruth M. Williams, in her purported capacity as president of the corporation, executed the following instruments in the name of W.C.T.U.-Philadelphia, grantor:

Deed, September 22, 1971, 10 acres to John A. and Emma V. Bearhalter, consideration $7,000.

Deed, September 27, 1971, 4.6 acres to Vernon and Doris Van Luvanee, consideration $5,000.

Deed, June 27, 1972, 10 acres to the aforesaid Bearhalters and Van Luvanees, consideration $4,000.

Three separate suits were instituted and consolidated for trial with agreement of the parties. One of the actions is a petition in the Orphans' Court Division by the Woman's Christian Temperance Union of Pennsylvania (W.C.T.U.-Pennsylvania), a nonprofit corporation, to set aside the conveyances. This plaintiff contends that it is the parent organization of W.C.T.U.-Philadelphia, that the latter organization was inactive at the time of the transfers, that Mrs. Williams was mentally ill, without authority to enter into the transactions, and the victim of designing persons, the purchasers. Pursuant to stipulation of counsel approved by the court, the Attorney General of Pennsylvania has intervened in his capacity of parens patriae and adopted the averments of the petition of W.C.T.U.-Pennsylvania. On his motion the court appointed a receiver pendente lite to oversee and conserve the structures on the land.[1]

---

1. For authority see Milasinovich v. The Serbian Progressive Club, 369 Pa. 26, 84 A. 2d 571 (1951).

Another of the three suits [No. 75-2314-08-6] is an action by the purchasers to quiet title. The third is an action [No. 72-5411-08-5] in equity by Aram and Rose Boornazian against W.C.T.U.-Philadelphia for specific performance of an agreement executed by Ruth Williams, as agent, to convey "approximately 13 acres and house, etc." for the sum of $22,000. There is a contention among some of the parties that the land descriptions overlap. . . .

## DISCUSSION

What was once a vigorous charitable organization ministering to the needs of women alcoholics is today a debilitated shell with no assets other than land overgrown with weeds and a dwelling in disrepair without water, heat, or electricity. It has no current corporate records and no duly elected officers. Its remaining representative is Ruth Williams who resides in the house with her husband under primitive conditions. Her misty status is that of former president and present de facto caretaker. To all appearances the premises are being used for no purpose other than a shelter for these two persons.

The Attorney General of Pennsylvania in his capacity of parens patriae asks this court to set aside the conveyances on the ground, among others, that they were unauthorized by defendant corporation. He further requests that the receiver be given authority to sell the entire 28 acres with the house and barn at public or private sale. The standing of the Attorney General to maintain this action is beyond question. He has the power to inquire into the status, activities and functioning of public charities

and to determine whether the charitable purposes for which they were created are being carried out.[2]

We are satisfied that the jurisdiction of this court extends to the power to set aside conveyances and any executory agreements upon a showing of good cause. Rule of Judicial Administration 2156 provides:

"Rule 2156—Orphans' Court Division

"In addition to other matters which by law are to be heard and determined by the orphans' court division of a court of common pleas, the division shall hear and determine the following matters:

"(1) Nonprofit corporations: The administration and proper application of property committed to charitable purposes held or controlled by any domestic or foreign nonprofit corporation and all matters arising under Title 15 of the Pennsylvania Consolidated Statutes (relating to corporations and unincorporated associations) or otherwise where is drawn in question the application, interpretation or enforcement of any law regulating the affairs of nonprofit corporations holding or controlling any property committed to charitable purposes, or of the members, security holders, directors, officers, employees or agents thereof, as such.

" 'Property committed to charitable purposes' means all property committed to the relief of poverty, the advancement of education, the advancement of religion, the promotion of health, governmental or municipal purposes, and other purposes

_____

2. Com. v. The Barnes Foundation, 398 Pa. 458, 159 A. 2d 500 (1960).

the accomplishment of which is beneficial to the community, except that the term does not include the property of any inter vivos trust jurisdiction of which was acquired by the court of common pleas prior to January 1, 1969 unless the president judge of the court orders the matter to be heard and determined in the orphans' court division."

This recently promulgated rule has not yet been construed by the appellate courts, but we concur in the view expressed in two adjudications of the Philadelphia Orphans' Court Division wherein it was held that the scope of the rule contemplates that jurisdiction extends to all internal matters of nonprofit corporations for charitable purposes, even to matters not directly bearing upon such funds.[3]

We are in accord with plaintiff's position that all the conveyances and the Boornazian agreement of sale should be set aside. The applicable statute in force at the time the transactions occurred was the Nonprofit Corporation Law of 1933[4], which provided at 15 P.S. §7308:

"Unless its articles or by-laws provide for the approval of another body, a nonprofit corporation shall not borrow money, or purchase, sell, lease away, or otherwise dispose of any real estate, unless and until a resolution authorizing the same shall have been approved by a majority of the

3. Re Pa. Home Teaching Society et al., 25 Fiduc. Rep. 556 (1975); The Musical Fund Society of Phila., 26 Fiduc. Rep. 1, 73 D. & D. 2d 115 (1975).

4. Act of May 5, 1933, P.L. 289, as amended, 15 P.S. §7001 et seq.

members of the corporation, who are present in person or by proxy and entitled to vote thereon, at a regular or special meeting, duly convened upon proper notice of this purpose."

Clearly the statutory requirements were not met. The evidence is that no resolution to dispose of the real estate was ever made and that the persons who professed to have the authority to enter the transactions in fact had no such authority, actual or apparent. The burden of proof on this issue rests with those persons who assert that Mrs. Williams had the authority: Neth v. St. John's Reformed Church, 335 Pa. 155, 6 A. 2d 421 (1939); Schwartz v. Mahoning Valley Country Club, 382 Pa. 138, 114 A. 2d 78 (1955).

The question arises as to whether the Bearhalters, Van Luvanees and Boornazians are entitled to repayment of the moneys expended by them in consideration of the conveyances and agreement of sale. The answer is yes. The orphans's court possesses broad power to give such relief as equity and justice require: Shewchuk Estate, 444 Pa. 249, 262, 282 A. 2d 307 (1971). The general rule is that when a court sets aside or voids a sale, it in effect accomplishes a recision of the transaction, and for that reason the parties are entitled to restoration of the status quo ante: Williamson's Appeal, 94 Pa. 231, 237 (1880); Stewart Estate, 23 Fiduc. Rep. 301, 63 Luz. 79 (1973). An exception to the rule is found where the transaction is brought about by claimant's own fraud. The evidence in this case does not disclose any fraud. At the most it discloses neglect on the part of the Bearhalters, Van Luvanees and Boornazians in failing to require the Williams and Gloria Ebron to produce evidence of

their authority to act. It is true that the purchasers were aware of the Williams' need of money, but such awareness, without more, does not constitute undue influence or fraud.

Petitioner W.C.T.U.-Pennsylvania contends that the real property should be awarded to it on the basis that W.C.T.U.-Philadelphia was and is its auxiliary. We disagree. The two corporations have always been separate entities. The alleged auxiliary was incorporated earlier than petitioner. Both were incorporated under the Act of April 29, 1874, P.L. 73, 15 P.S. §3001 et seq., which act did not authorize the power to create subordinate entities. The fact that W.C.T.U.-Philadelphia at one period of its existence paid dues to the putative parent and acknowledged itself to be an auxiliary is not dispositive of the issue. The Pennsylvania Supreme Court under similar circumstances has held that the alleged parent corporation has no right to appropriate property of an alleged subordinate corporation even though the two bodies assumed a parent-local relationship. Such an act was declared to be extra-legal and unenforceable: Chosen Friends Castle No. 33, Knights of the Golden Eagle of Pennsylvania Appeal, 342 Pa. 60, 20 A. 2d 237 (1941). In a very recent case the Commonwealth Court had before it the question of whether a township had the statutory power to order the transfer of real and personal property of one fire company to another fire company. The court ruled that since both companies were nonprofit corporations organized for charitable purposes, non-members lacked the power to control or dispose of the corporate property: Lacey Park Volunteer Fire Company

No. 1 v. Board of Supervisors of Warminster Township, 24 Pa. Commonwealth Ct. 54, 365 A. 2d 880 (1976).

We do agree with petitioner's position that if it is not entitled to the assets then a distribution shoulu be made pursuant to the doctrine of cy pres.[5] This is not to say, however, that petitioner has a preferred standing in this respect merely by reason of being a party to the action. On the existing record the court is insufficiently informed as to the number and identities of other organizations, if any, which may be engaged in similar charitable undertakings.

## CONCLUSIONS OF LAW

1. The governing constitutions and by-laws of W.C.T.U. of Pennsylvania that existed as shown by the evidence were lawful in form and within the scope of the corporate powers of W.C.T.U. of Pennsylvania, subject, however, to the laws of Pennsylvania that might relate to or govern them or their particular application.

2. The primary stated goals and objectives of the W.C.T.U. of Philadelphia and of the W.C.T.U. of Pennsylvania, as set forth in their respective articles of incorporation, constitutions, and by-laws were, and continue to be, substantially similar, and the primary stated purposes of both organizations were, and continue to be, virtually identical, such common purpose being to promote the cause of temperance and/or total abstinence from intoxicating liquors.

---

5. Act of June 30, 1972, P.L. 508, 20 Pa.C.S.A. §6110.

3. W.C.T.U. of Philadelphia did not formally elect any corporate officers to replace those officers whose terms expired on or about November 10, 1967.

4. W.C.T.U. of Philadelphia has not held any formal meeting of either its officers or of its members at any time subsequent to November 10, 1967.

5. Respondent W.C.T.U. of Philadelphia has been, during a period commencing prior to September, 1971, and extending up to the present time, inactive.

6. The tract of approximately 28 acres known as Melody Crest in Doylestown, Bucks County, Pa., was acquired on or about June 13, 1960, and thereafter improved in the name of W.C.T.U. of Philadelphia with funds committed to charitable purposes (a portion of such funds being traceable directly to funds contributed to W.C.T.U. of Philadelphia during a state-wide solicitation campaign), and the Melody Crest property itself accordingly represents an asset committed to charitable purposes.

7. At no time subsequent to June, 1960, have either the officers or the members of W.C.T.U. of Philadelphia voted to authorize the sale or other disposition of any or all of the Melody Crest property.

8. At no time relevant hereto has W.C.T.U. of Philadelphia sought or received court approval for the sale or other disposition of any or all of the Melody Crest property.

9. The Attorney General of Pennsylvania retains his broad common law powers to supervise charitable corporations, and he is not limited to any single statutory remedy as the sole means of exercising such supervisory powers.

10. There is no organic connection between the W.C.T.U. of Pennsylvania and the W.C.T.U. of Philadelphia and accordingly the former has no status to raise the issues set forth in its petition.

11. W.C.T.U. of Philadelphia is and always has been independent and separate from W.C.T.U. of Pennsylvania and is not subject to the controls, by-laws, constitutions or regulations of W.C.T.U. of Pennsylvania.

12. The actions docketed as Number 72-5411-08-5 and 75-2314-08-6 should be dismissed.

## DECREE NISI

And now, October 12, 1977, it is ordered and decreed for the reasons stated in the foregoing adjudication that the following conveyances are declared null and void and of no effect: . . .

The recorder of deeds is directed to mark the foregoing records appropriate to this order upon the decree nisi becoming final.

It is further decreed that the agreement of sale dated May 16, 1972, between the Women's Christian Temperance Union and Aram and Rose K. Boornazian providing for the sale of approximately 13 acres and house is null and void and of no effect.

The receiver pendente lite is directed to make inquiry as to the identity of charitable organizations which may qualify to receive the assets of W.C.T.U. of Philadelphia. He shall thereafter report his recommendations to the court with notice to all parties and persons in interest.

The actions docketed as no. 72-5411-08-5 and no. 75-2314-08-6 are dismissed.

This decree nisi shall become final on praecipe unless exceptions are filed within 10 days.

## OPINION SUR EXCEPTIONS
## AND FINAL DECREE

All parties except the Commonwealth have filed and argued exceptions to the adjudication. The exceptions fall into five principal categories:

(1) That the chancellor erred in setting aside the conveyances because Mrs. Williams had apparent (if not actual) authority to make them.

(2) That the parties which challenged the conveyances are estopped from doing so.

(3) That the Commonwealth is barred by the doctrine of laches.

(4) That the court should award counsel fees and expenses to the unsuccessful litigants.

(5) That the chancellor erred in not awarding the assets in question to W.C.T.U. of Pennsylvania.

We need not repeat what was said in the adjudication concerning the noncompliance with the statute which required a resolution authorizing the conveyances. At oral argument references were made to corporate resolutions required by the title insurance companies at settlement, but none was placed in evidence. If in fact any such resolution, or copy, was produced at settlement, it appears to have been certified by one Arlene Barnes purporting to be corporate secretary at a time when she did not hold that office.

Exception was taken to that part of the chancelor's discussion relating to apparent authority to convey. Although exceptions to the discussion portion of an adjudication may not be taken, we will say that the purchasers of the tracts in question should have been aware that W.C.T.U. Philadelphia was not actively functioning and that Mrs. Williams needed money and appeared to live a

marginal existence. Furthermore it is doubtful that statutory requirements may be waived or bypassed by resort to the concept of apparent authority. Restatement, 2d, Agency, states at section 27:

"§27. Creation of Apparent Authority: General Rule

"Except for the execution of instruments under seal *or for the conduct of transactions required by statute to be authorized in a particular way,* apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." (Emphasis supplied.)

We do not feel that the doctrines of laches and estoppel are applicable. It is true that four years passed before the Commonwealth moved to set aside the conveyances, but the delay was due to the lack of prior knowledge. A stronger case of delay or acquiescence is necessary to prevent equitable relief when sought by the State than when a mere private right is involved: Stahl v. First Pa. Bank, 411 Pa. 121, 130, 191 A. 2d 386 (1963).

Some of the parties seek an award of counsel fees and expenses. The general rule is that attorney fees are not recoverable in the absence of express statutory authority, agreement by the parties, or some other established exception: Chatham Communications, Inc. v. General Press Corp., 463 Pa. 292, 344 A. 2d 837 (1975). None of these circumstances is present here. Even if it were assumed that such fees are allowable as a matter of equitable discretion we would exercise our discretion against

such an allowance because, unlike instances where counsel fees have been allowed for legal services in protecting or raising a common fund, the legal services rendered by the applicants in this litigation were inimical to the preservation of the property for charitable purposes.

In our decree nisi we directed the receiver pendente lite to make inquiry as to the identity of charitable organizations which may qualify to receive the assets of W.C.T.U. Philadelphia. After advertisement and hearing he has recommended that the property be transferred to Woman's Christian Temperance Union of Pennsylvania. We feel this recommendation is appropriate.

## FINAL DECREE

And now, April 28, 1978, it is ordered:

1. The exceptions to the decree nisi are dismissed.

2. The recorder of deeds is directed to mark his records to reflect that the following conveyances are declared null and void: . . .

3. The agreement of sale dated May 16, 1972, between the Woman's Christian Temperance Union and Aram and Rose K. Boornazian providing for the sale of approximately thirteen acres and house is null and void and of no effect.

4. The actions docketed as no. 72-5411-08-5 and no. 75-2314-08-6 are dismissed.

5. On recommendation of the receiver pendente lite and pursuant to the Act of June 30, 1972, P.L. 508, 20 Pa.C.S.A. §6110, the court awards to Woman's Christian Temperance Union of Pennsylvania, a nonprofit corporation having its principal office at Cleona, Pennsylvania, title in fee simple (subject to

existing liens and encumbrances of record) to all that tract of land and structures thereon at Melody Crest, R.D. 1, Limekiln Road, Doylestown, Pa., as described in deed book 1546, page 237, recorded with the recorder of deeds of Bucks County, consisting of 28.085 acres more or less.

6. The receiver pendente lite is awarded compensation and expenses in the total sum of $1,204.55.

7. As a condition precedent to the passing of title, Woman's Christian Temperance Union of Pennsylvania is directed to pay the following sums as reimbursement for the consideration paid by the payees and in payment of compensation and expenses of the receiver pendente lite:

| Payees | Amount |
|---|---|
| John A. and Emma V. Bearhalter | $7,000.00 |
| Vernon and Doris Van Luvanee | 5,000.00 |
| John A. Bearhalter and Emma V. Bearhalter and Vernon and Doris Van Luvanee | 4,000.00 |
| Donald L. Toner, Esq., Receiver | 1,204.55 |
| Aram Boornazian and Rose K. Boornazian | 100.00 |

8. This decree shall not be recorded unless there is offered for recording, concurrently therewith, written evidence of payment of the sums stated in paragraph seven herein.

9. Subject to the provisions of paragraph number seven herein, a certified copy of this decree shall be recorded at the expense of Woman's Christian Temperance Union of Pennsylvania in the deed book in the office of the recorder of deeds of Bucks County and shall be indexed by the recorder in the grantor's index under the name of Woman's

Christian Temperance Union of Philadelphia and in the grantee's index under the name of Woman's Christian Temperance Union of Pennsylvania, and shall be registered with the proper authority empowered to keep a register of real estate in said county.

10. Parties shall pay their own costs.