J-S54036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RASHAWN MOSLEY | : | |
| | : | |
| Appellant | : | No. 796 MDA 2020 |

Appeal from the PCRA Order Entered May 7, 2020
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0003813-2004

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED FEBRUARY 25, 2021**

Rashawn Mosley ("Mosley") appeals from the Order dismissing his first Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"). **See** 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

In the early morning hours of July 6, 2004, Christopher Thompson ("Thompson") and Daniel Giorgione ("Giorgione") were in a vehicle in the Hall Manor area of Harrisburg, Dauphin County, when Thompson was shot and killed in a drug-related transaction.  After the shooting, Giorgione provided police with a description of the shooter, and identified the shooter in a photo array.  Mosley did not match the description Giorgione gave of the shooter, and the photo identified by Giorgione as the shooter was not Mosley's.  During the investigation of the shooting, police interviewed Mosley's brother, Christopher Stevenson ("Stevenson").  Stevenson identified Mosley as the

shooter. Police subsequently interviewed Mosley, who submitted a recorded statement admitting to shooting Thompson.

On September 7, 2005, Mosley entered a negotiated guilty plea to third-degree murder, robbery, and carrying firearms without a license. The trial court sentenced Mosley to twenty to forty years in prison.

In February 2006, Mosley, *pro se*, filed a PCRA Petition, asserting that his guilty plea was unknowingly entered based upon ineffective assistance of counsel. The PCRA court denied Mosley relief without a hearing. Mosley appealed to this Court, and we remanded in order for the PCRA court to hold an evidentiary hearing on the issues raised in Mosley's PCRA Petition. *See* ***Commonwealth v. Mosley***, 929 A.2d 244 (Pa. Super. 2007) (unpublished memorandum). In January 2009, following a hearing, the PCRA court denied the Petition. On direct appeal, this Court concluded that, at the time of trial, an exculpatory eyewitness existed and was available to testify that another individual was the shooter. This Court reversed the PCRA court's denial of the Petition, and remanded the matter for a trial. ***See Commonwealth v. Mosley***, 4 A.3d 676 (Pa. Super. 2010) (unpublished memorandum).

Mosley's initial trial resulted in a hung jury. At Mosley's retrial, Mosley and Stevenson each testified that their statements to police were coerced, and that police assaulted them in order to elicit their statements. The jury also heard testimony from Giorgione that Mosley was not the shooter. Further, the jury heard testimony from Kevin Walker ("Walker"), Mosley's cousin, that

he was in his mother's house playing video games with Mosley and Stevenson on the night of the shooting. At the conclusion of trial, a jury convicted Mosley of criminal homicide, robbery, recklessly endangering another person, and carrying a firearm without a license. The trial court sentenced Mosley to an aggregate term of life in prison. This Court affirmed Mosley's judgment of sentence, and our Supreme Court denied allowance of appeal. *See Commonwealth v. Mosley*, 104 A.3d 57 (Pa. Super. 2014) (unpublished memorandum), *appeal denied*, 105 A.3d 736 (Pa. 2014).

On December 11, 2015, Mosley filed the instant, timely Petition. The PCRA court appointed Christopher F. Wilson, Esquire ("Attorney Wilson"), as counsel, and appointed an investigator in March 2018. Attorney Wilson filed a supplemental PCRA Petition in January 2019, alleging that Mosley's trial counsel, Anne Gingrich Cornick, Esquire ("Attorney Cornick"), was ineffective in failing to investigate defenses and witnesses, failing to provide an adequately-funded defense, and failing to withdraw due to a conflict of interest. Attorney Wilson filed a second supplemental PCRA Petition in June 2019, asserting Attorney Cornick's ineffectiveness based upon a claim that police generated incorrect mugshot information, and a third supplemental PCRA Petition in August 2019, asserting that the testimony of eyewitness Abismael Bruno ("Bruno") constituted after-discovered evidence under the PCRA.

The PCRA court conducted several hearings regarding Mosley's Petitions. The Commonwealth and Mosley filed memoranda with the PCRA court after the hearings. On May 4, 2020, the PCRA court dismissed Mosley's Petition. Mosley filed a timely Notice of Appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Mosley raises the following issues for our review:

A. Whether the PCRA [c]ourt erred by denying relief based upon the assertion that trial counsel was ineffective for failing to properly investigate the case, in failing to interview multiple identified alibi and eyewitnesses, and in failing to investigate a clearly erroneous mugshot created by the Harrisburg Police which matched the height description of the perpetrator provided by the two eyewitnesses, but was more than three inches off of [Mosley]'s actual height[?]

B. Whether the PCRA [c]ourt erred in failing to find that [Mosley]'s defense was inadequately funded[,] violating [Mosley]'s state and federal right to counsel, and state and federal due process and equal protection rights, because appointed counsel was only compensated at a rate of less than $30 per hour and approximately $800 per each trial, and the fact that there was no funding allocated for an investigator[?]

C. Whether the PCRA [c]ourt erred [in] not appointing new counsel after [Mosley] filed a request for substitute counsel prior to trial[,] and erred in not providing a new trial based upon this asserted ground for relief where trial counsel had conflicts of interest in the case given that the Commonwealth's case hinged on a confession which [Mosley] claimed was under duress made to the Harrisburg Police when [Attorney Cornick]'s husband worked for the Harrisburg Police and was indirectly involved with the instant case itself by communicating with [Mosley]'s brother about the instant case[?]

D. Alternatively, whether the PCRA [c]ourt erred in failing to provide relief to [Mosley] concerning the newly discovered evidence regarding [] Bruno's witness of the criminal episode which was communicated to [Mosley] in late 2015[,] who timely

- 4 -

submitted that information in a PCRA filing and thus meeting the test under 42 Pa.C.S.[A. §] 9543(a)(2)(vi)[?]

E. Whether the PCRA [c]ourt erred to the extent that its denial of relief was potentially based on the concept that prejudice cannot be established, as noted on page [ten] of the [Rule] 1925[(a)] Opinion, due to [Mosley] having prior trial where his conviction was affirmed …[,] where the prior trial introduced a confession and a denial of a suppression of that confession, and thus the law of the case would establish that no possible prejudice could be shown by [Mosley] on collateral review[?]

Brief for Appellant at 3-4 (renumbered).

"The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." ***Commonwealth v. Weimer***, 167 A.3d 78, 81 (Pa. Super. 2017). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Id.*** (citation omitted).

Mosley's first three issues challenge Attorney Cornick's effectiveness as trial counsel. To prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must plead and prove, by a preponderance of the evidence, that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Specifically,

[t]o be entitled to relief on an ineffectiveness claim, a PCRA petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. ***Commonwealth v. Chmiel***, … 30 A.3d 1111, 1127 (Pa. 2011) (employing ineffective assistance of counsel test from

> ***Commonwealth v. Pierce***, … 527 A.2d 973, 975-76 (Pa. 1987)).
> Counsel is presumed to have rendered effective assistance.
> Additionally, counsel cannot be deemed ineffective for failing to
> raise a meritless claim. Finally, because a PCRA petition must
> establish all the ***Pierce*** prongs to be entitled to relief, we are not
> required to analyze the elements of an ineffectiveness claim in any
> specific order; thus, if a claim fails under any required element,
> we may dismiss the claim on that basis.

***Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015) (footnote and some citations omitted).

In his first issue, Mosley argues that Attorney Cornick was ineffective for failing to properly investigate potential alibi witnesses, eyewitnesses, and mugshot evidence. ***See*** Brief for Appellant at 14-37. Mosley asserts that Attorney Cornick failed to properly investigate the possible testimony of Tandra and Shavelle Walker, potential alibi witnesses, and Bruno, a potential eyewitness. ***Id.*** at 14-33. Specifically, Mosley asserts that these witnesses would have either buttressed the credibility of—or, in some cases, been more credible witnesses than—the witnesses Attorney Cornick used at trial. ***Id.*** at 18-33. Additionally, Mosley claims that Attorney Cornick failed to properly investigate, and raise at trial, the "clearly erroneous" mugshot of Mosley introduced at trial by the Harrisburg police, which listed Mosley as six feet tall, rather than Mosley's actual height of approximately five feet, nine inches. ***Id.*** at 34. Mosley claims that the mugshot constituted either a "sloppy mistake" by police, or that the mugshot was fabricated to match Giorgione's description of a six-foot-tall shooter. ***Id.*** at 34-37. In either case, Mosley claims, Attorney Cornick fell short of providing effective assistance of counsel by not

investigating the reason for the discrepancy, and for failing to exploit it at trial.

*Id.*

> Counsel has a duty to undertake reasonable investigations or to make reasonable decisions that render particular investigations unnecessary. Where counsel has made a strategic decision after a thorough investigation of law and facts, it is virtually unchallengeable; strategic choice made following a less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation of the investigation. As noted, an evaluation of counsel's performance is highly deferential, and the reasonableness of counsel's decisions cannot be based upon the distorting effects of hindsight. Furthermore, reasonableness in this context depends, in critical part, upon the information supplied by the defendant. Thus, assuming a reasonable investigation, where there is no notice to counsel of particular mitigating evidence, he cannot be held ineffective for failing to pursue it.

*Commonwealth v. Basemore*, 744 A.2d 717, 735 (Pa. 2000) (citations omitted).

During the PCRA hearing, Attorney Cornick testified as follows regarding her consideration of an investigator to evaluate potential alibi witnesses:

> In this case, I will reiterate, I found no need to [utilize an investigator] with regard to our defense. The prime witness was … Giorgione, who not only couldn't identify [] Mosley as the shooter but, in fact, positively said that [Mosley] was not the shooter. He had given that statement to police. It was clear as day. I would never have subjected that to someone else's secondary or speculative questioning that would have elicited a response from [] Giorgione that was different from the one I was already quite happy with as far as what we'd say for [] Mosley.
>
> [] Mosley himself testified. [] Stevenson testified. If you look at [] Walker's testimony, he says that [] Stevenson was with him at the time during this alibi as well. [] Stevenson never testified on the stand that he was with [] Mosley during the time of the shooting. Furthermore, [] Mosley himself did not testify that he was somewhere other than - - anywhere else. He didn't

bring up his own supposed alibi that now, I suppose, you have some people coming in to testify about.

What I thought was the most reliable testimony was what had already been elicited from police statements prior to trial, because our arguments were twofold: [o]ne, that [] Mosley was coerced in his confession; and, two, that [] Giorgione, the only eyewitness to the crime, testified that [] Mosley was not the shooter.

There was no reason to have a third party investigate or interview those people because what was already taken and satisfied on the record was exactly the testimony I hoped to elicit at trial. And I certainly wouldn't want to put myself in the position of an attorney to get testimony that had been contradicted by that witness through my own investigator[']s furthering of questioning.

N.T., 4/29/19, at 28-30 (some paragraphs combined).

Specifically, with respect to investigating Bruno's account of the shooting, Attorney Cornick testified that she did not reach out to Bruno, as she did not want to "reach out to a person on whom [she would] want to point the finger of being a perpetrator of a crime to give him the opportunity to deny that on the stand to a jury." *Id.* at 35. Attorney Cornick reiterated her strategy at trial was as follows:

The point of my defense was that the eyewitness to the crime, [] Giorgione, could testify clearly that [] Mosley was not the perpetrator. That was the best evidence … for me to present at trial.

* * *

I did not need to talk to [] Bruno. The best witness with regard to whatever was testified to about [] Bruno was [] Giorgione, who took the stand and testified that it was not [] Mosley who was the shooter.

* * *

[] Giorgione told the police in a recorded statement that it was not [] Mosley who shot [] Thompson. There was nothing about a statement like that that was in [] Mosley's interest that I try to tease apart or elicit something that was not as helpful as what it was on its own.

*Id.* at 35, 37, 38.

Thus, the record supports the PCRA court's determination that Attorney Cornick had a reasonable basis for her actions. *See Treiber*, *supra*; *Basemore*, *supra*.

Regarding Mosley's challenge to the failure of Attorney Cornick to investigate the mistakes on his mug shot, Attorney Cornick testified as follows:

A. [Attorney Cornick:] Giorgione saying that [Mosley] was 6 feet tall and 150 pounds means squat to me, frankly, when I was faced with a statement from [] Giorgione who said the shooter was not Rashawn Mosley. So I elicited from [] Giorgione that [] Mosley was not the shooter in this homicide. … I'm explaining to you why [the issue of Mosley's reported mugshot height] was not something about which to make hay when [] Giorgione testified that the shooter was not [] Mosley.

Q. [Attorney Wilson:] Okay. You did not ask anything with the Harrisburg police, assuming he's - - his height is his height. It's not even 5 foot, 9, probably. You didn't ask anything concerning, why is there a mugshot from the Harrisburg police that has inaccurate information that matches [] Giorgione's information?

A. Because, quite frankly, Mr. Wilson, I think it would have resulted in the same rigamarole of an exchange that's occurring right now and would have been of no benefit to my client in front of the jury.

* * *

A. … [M]ore importantly, when [Giorgione was] asked, [" I]s [Mosley] the shooter?["] He answered, [" N]o.["] That's the best

evidence for a jury to hear, or that was my strategic … determination at that time.

N.T., 4/29/19, at 50-52.

> The PCRA court addressed Mosley's argument as follows:

> We [] dismiss [Mosley]'s argument that trial counsel was ineffective in not seeking to investigate why the booking information was incorrect and by failing to cross-examine or impeach any of the Harrisburg police witness[es] on the erroneous information. As stipulated, the standard procedure at the Harrisburg Police/Dauphin County Booking Center when someone is booked and a mugshot is taken is to measure the defendant by height and estimate the weight, or use the weight provided in the police criminal complaint if one is listed by the officer. Joint Stipulation as to Dauphin County Booking Procedure for Purposes of PCRA Hearing, filed August 19, 2019. [Mosley] asserts that either the police made a sloppy mistake in creating a mugshot that noted a height more than three (3) inches taller than [Mosley]'s 5'8 7/8" height, or [Mosley]'s mugshot was created to match the description giv[en] by [] Giorgione. Again, there was no reasonable probability that, but for counsel's alleged error, the outcome of the proceedings would have been different. Further, in light of all the conflicts in testimony, this dispute in observed measurement is *de minimis* in nature.

PCRA Court Opinion, 5/4/20, at 10-11 (footnotes omitted).

We agree with the sound analysis of the PCRA court, and affirm on the basis of its Opinion with regard to this issue. ***See id.*** Because Mosley has not demonstrated that Attorney Cornick lacked a reasonable basis for her decision to investigate the mugshot discrepancy, or that he suffered prejudice as a result, we cannot grant him relief on this claim. ***See Chmiel***, ***supra***.

In his next issue, Mosley argues that the PCRA court erred when it concluded that his defense was not inadequately funded. Brief for Appellant at 42-52. Mosley asserts that trial counsel's compensation—which amounted

to approximately $30 per hour and $800 for Mosley's trial—was insufficient to satisfy the minimum level of representation to satisfy his constitutional due process. *Id.* at 42-43. Further, Mosley alleges that his defense was not provided with sufficient resources to hire an investigator, which he argues was critical to his defense. *Id.* at 43-44. Mosley brings to our attention the costs associated with maintaining a law practice, including servicing an attorney's student loan debt, and asserts that Dauphin County's compensation for conflict attorneys, like Attorney Cornick, was insufficient to meet constitutional muster. *Id.* at 44-45. While Mosley concedes that Attorney Cornick is "a more than capable attorney," he concludes that she would have put forth a more substantial defense had she been paid more to do so. *Id.* at 48, 51-52.

In its Opinion, the PCRA court addressed this issue as follows:

Here, there is simply no evidence presented by [Mosley] that [Attorney Cornick] was underfunded and, therefore, ineffective. While a precise compensation figure was not elicited at the PCRA hearing, the testimony revealed that trial counsel was not underfunded in terms of her representation of [Mosley]. Th[e PCRA c]ourt pointedly asked Attorney Cornick: "[D]id you feel you were inadequately compensated for this case to the point that it impinged on your ability to be able to give the resources necessary to defend the defendant?" Attorney Cornick: "No." N.T., 4[/]29[/]19, [at] 18-19. Attorney Cornick also testified that there were no other cases that were drawing her attention away from [Mosley]'s case and affecting her ability to put forth a defense. [*Id.* at] 20. Attorney Cornick zealously advocated on behalf of [Mosley] and presented the strongest evidence in an attempt to prove that [Mosley] was not the shooter. As set forth previously, the appointment of an investigator for PCRA purposes would not uncover any additional witnesses that could have helped [Mosley]. Rather, trial counsel decided the best defense would be to present the eyewitness to the crime, [] Giorgione, who could testify that [Mosley] was not the perpetrator.

- 11 -

PCRA Court Opinion, 5/4/20, at 11-12 (footnote omitted).

We agree with the sound analysis of the PCRA court, and affirm on this basis in regarding Mosley's second claim. **See Chmiel**, **supra**.

In his third issue, Mosley argues that the PCRA court erred in failing to appoint Mosley new counsel due to a conflict of interest. Brief for Appellant at 52-59. Mosley asserts that Attorney Cornick suffered from a conflict of interest, as her husband, Sean Cornick ("Corporal Cornick"), was, at the time of trial, a corporal with the Harrisburg Police Department. **Id.** at 53. Mosley claims that because his theory of the case hinged on his contention that Harrisburg police officers illegally coerced him and Stevenson into providing incriminating statements, Attorney Cornick could not effectively present that contention given her relationship with an officer in the same department. **Id.** at 54-56. In support of this contention, Mosley points to a history of interactions between Corporal Cornick and Mosley's brother, where Corporal Cornick had asked Mosley's brother for assistance in other, unrelated investigations at around the same time as Mosley's trial. **Id.** at 58-59.

We review ineffectiveness claims based on a conflict of interest as follows:

> [A]n appellant cannot prevail on a preserved conflict of interest claim absent a showing of actual prejudice. We presume prejudice when the appellant shows that trial counsel was burdened by an "actual"—rather than mere "potential"—conflict of interest. To show an actual conflict of interest, the appellant must demonstrate that: (1) counsel "actively represented conflicting interests"; and (2) those conflicting interests "adversely affected his lawyer's performance." **Commonwealth v. Collins**, … 957

A.2d 237, 251 ([Pa. ]2008). Clients' interests actually conflict when "during the course of representation" they "diverge with respect to a material factual or legal issue or to a course of action." *Id.*

*Commonwealth v. Sepulveda*, 55 A.3d 1108, 1147 (Pa. 2012).

In its Opinion, the PCRA court addressed this issue as follows:

A review of the record reveals [Mosley] failed to present any credible evidence that trial counsel's relationship with her husband, who was a corporal working in the vice unit of the Harrisburg City Police at the time of [Mosley]'s trials, adversely affected her representation of [Mosley]. It is true that Attorney Cornick rested her defense on police coercion in obtaining [Mosley]'s and [] Stevenson's testimony; however, her marriage to a police officer in the same department did not prevent her from attacking the conduct in interviewing [Mosley]. Attorney Cornick testified that "[t]here was no conflict of interest in my representation of [] Mosley due to my husband's position." [N.T., 4/29/19, at 40.] Additionally, she noted that she had "no problem … raising issues … with the competence of Harrisburg police, prior to this trial and post this trial." [*Id.*]

PCRA Court Opinion, 5/4/20, at 13-14.

Our review of the record confirms that Attorney Cornick zealously represented Mosley's interests at trial, and Mosley has presented no evidence that Attorney Cornick's relationship with Corporal Cornick "adversely affected" her performance in representing Mosley, or that it represented an actual conflict of interest. As the PCRA court states, Mosley's contention is belied by Attorney Cornick's theory of the case, which directly attacked the Harrisburg police department for its conduct in interviewing Mosley and Stevenson. In light of the foregoing, we conclude that Mosley's claim that Attorney Cornick

- 13 -

provided ineffective assistance of counsel on these grounds lacks arguable merit, and we can grant him no relief on this claim. *See Sepulveda*, *supra*.

In Mosley's fourth issue, he argues that the PCRA court erred in failing to conclude that Bruno's testimony constituted after-discovered evidence under section 9543(a)(2)(vi). Brief for Appellant at 37-42. Mosley reiterates that Attorney Cornick failed to properly investigate the case, and asserts that "the only way to conclude that [Attorney Cornick] was not ineffective for failing to interview Bruno … would be to conclude that Bruno was not available during [Mosley]'s … [] trials due to his previous status as a suspect and because he originally indicated that he would not cooperate." *Id.* at 37-38. Mosley points to the reliability of Bruno's testimony because Bruno knew Mosley "well," due to seeing Mosley at the Hall Manor basketball court throughout the summer of 2004, while Giorgione had never met Mosley prior to the night of the shooting. *Id.* at 41-42. Further, Mosley asserts that Bruno's testimony was not merely cumulative, as Giorgione had identified Bruno as being near the scene of the shooting. *Id.* In light of this purported after-discovered evidence, Mosley requests a new trial. *Id.* at 42.

Under the PCRA,

[w]here a petition is otherwise timely, to prevail on an after-discovered evidence claim for relief under [42 Pa.C.S.A. §] 9543(a)(2)(vi), a petitioner must prove that (1) the exculpatory evidence has been discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. *Commonwealth v. D'Amato*, 856 A.2d 806,

823 (Pa. 2004); *see* [*Commonwealth v.*] *Cox*, 146 A.3d 221,] 227-28 [(Pa. Super. 2016)] ([stating that] "[o]nce jurisdiction has been properly invoked, … the relevant inquiry becomes whether the claim is cognizable under [Section 9543] of the PCRA.").

*Commonwealth v. Burton*, 158 A.3d 618, 629 (Pa. 2017) (citation omitted).

In this case, Mosley failed to demonstrate that Bruno's potential testimony could not have been discovered prior to trial through reasonable diligence. The record reflects that Giorgione had originally identified Bruno in a photo array, and police executed a search warrant on Bruno's residence as part of their initial investigation into the shooting. *See* N.T., 4/29/19, at 33-35 (wherein Attorney Wilson introduces a search warrant for Bruno's residence, and Attorney Cornick testifies that Giorgione had identified Bruno to police on the night of the shooting). Further, Bruno's testimony would have been cumulative, as his identification of the shooter substantially mirrored the identification of another eyewitness, Giorgione, who was in the car with Thompson when he was shot. N.T., 6/17/19, at 23-25 (wherein Bruno testifies that the shooter was a dark-skinned male wearing a baseball cap); *see also* N.T., 9/13/12, at 32-33 (wherein Giorgione testifies that the shooter was a dark-skinned male wearing a baseball cap). Accordingly, Mosley's after-discovered evidence claim is without merit, and we cannot grant him relief. *See Burton*, *supra*.

Finally, Mosley claims that the PCRA court erred when it concluded that prejudice could not be established, because his conviction was affirmed by this Court on direct appeal. Brief for Appellant at 59-61. Mosley asserts that

this Court's acceptance of the PCRA court's rationale in this regard would "damage the integrity of the present criminal justice system[,]" as it would "create an ever[-]stronger incentive for law enforcement to obtain a confession[.] *Id.* at 60. Mosley urges this Court to reject such an analysis, and that he should receive a new trial. *Id.* at 61.

In a footnote in its Opinion, the PCRA court stated the following, in its analysis under the prejudice prong of the *Pierce* test, regarding Mosley's contention that Attorney Cornick provided ineffective assistance of counsel in failing to properly investigate witnesses:

> Moreover, in addition to the foregoing analysis, th[e PCRA c]ourt echoes the Commonwealth's position with regard to [Mosley]'s confession to the crimes. Specifically, the Commonwealth offers that the law of this case is that [Mosley]'s confession was knowingly, voluntarily, and intelligently given and, therefore, there is no probability that the outcome of the trial would have been different. In its memorandum opinion filed on May 23, 2014, th[is] Court adopted th[e trial c]ourt's reasoning in finding that [Mosley]'s confession was knowing, voluntary, and intelligently given. *Commonwealth v. … Mosley*, [104 A.3d 57 (Pa. Super. 2014) (unpublished memorandum)]. [Mosley]'s theory of the case throughout trial was that statements made by both him and [Stevenson] were the result of police coercion. He further argued that he did not understand his rights and consistently asked for an attorney. [Mosley] took the stand at trial and had an opportunity to testify that he was somewhere else at the time of the crime. He did not do so.

PCRA Court Opinion, 5/4/20, at 10 n.3.

The PCRA court's statements, which Mosley challenges in this argument, addressed the prejudice prong of the *Pierce* test for ineffective assistance of counsel. *See id.* However, the PCRA court also found that Attorney Cornick

possessed a reasonable basis for not investigating other potential witnesses.

*See id.* at 9-10 (wherein the PCRA court analyzes Attorney Cornick's reasonable basis for her strategic decisions). Accordingly, because Mosley's ineffectiveness claim fails on reasonable basis grounds, we need not address the PCRA court's analysis under the prejudice prong of the *Pierce* test. *See Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010) (stating that if an ineffectiveness claim fails under any one of the *Pierce* prongs, we may dismiss the claim on that basis).

Based on the foregoing, we affirm the Order of the PCRA court dismissing Mosley's Petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/25/2021